### 2,000 TONS OF COAL ex THE MICHIGAN.

### JONES v. W. K. NIVER COAL CO.

(Circuit Court of Appeals, First Circuit. January 20, 1905.)

#### No. 558.

**1. ADMIRALTY—DELAY—DEMURRAGE.**

The charterer having arranged for a discharge at a particular wharf, the vessel's agent, on arrival, thought the berth unsuitable, and arranged for discharge at another dock, which was occupied, so that the vessel was delayed two days. *Held* that, in the absence of other evidence, the charterer was not liable for such delay which was caused by the shipowner and his agents.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, §§ 570, 576, 587.

Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.]

**2. SAME—DELAY IN UNLOADING.**

Where the stevedoring in discharging a vessel was done by an employé of the ship's agent, the charterer was not responsible for his delays.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, §§ 570, 576, 587.]

**3. SAME—EVIDENCE.**

On a libel for demurrage, evidence *held* insufficient to establish that failure to furnish sufficient lighters to discharge cargo on both sides of the vessel was due to the fault of the charterer.

**4. SAME—CUSTOMHOUSE PERMIT.**

Where the discharge of a vessel was stopped during five hours for want of a customhouse permit, which had been mislaid by a customs officer, and the permit was procured by the charterer very soon after

the discharge was stopped for want thereof, and it did not appear that the stevedore was ready to proceed when the permit arrived, the charterer was not liable for such delay.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, §§ 570, 576, 585, 587.]

Appeal from the District Court of the United States for the District of Massachusetts.

The following is the opinion of Lowell, District Judge, in the court below:

The charter party in this case provided:

"(8) The cargo to be taken from alongside by consignee at port of discharge, free of expense and risk to the steamer as fast as steamer can deliver, weather permitting, Sundays and holidays excepted, provided steamer can deliver it at this rate; if longer detained, consignees to pay steamer demurrage at the rate of fourpence per net register ton per running day (or pro rata for part thereof), time to commence when steamer is ready to unload and written notice given, whether in berth or not. In case of strikes, lockouts, civil commotions, or any other causes or accidents beyond the control of the consignees which prevents or delays the discharging, such time is not to count, unless the steamer is already on demurrage. Steamer to effect discharge of the cargo, and providing only steam, steam winches, winchmen, gins and falls."

The steamer arrived at Boston on November 7th, and reported November 8th. The charterer had arranged for discharge at the West India Fibre Company's wharf, but Mr. Hall, the vessel's agent, thought the berth unsuitable, and arranged for discharge at the Commonwealth Dock instead. The berth there was occupied, and so the Lake Michigan was not berthed until November 10th. She began to discharge November 11th. In the absence of further evidence, I find that the delay prior to the beginning of the discharge was caused by the shipowner and his agents, rather than by the charterer.

The stevedoring was done by Donahue, who was employed and paid by Hall. The meaning of the charter party is not altogether clear, and libelant's counsel denied that Donahue was the libelant's agent, but he did not argue in support of his denial, and the agency appears to me established. For delays caused by Donahue, therefore, the charterer is not responsible. The libelant's principal complaint was a want of lighters, or, rather, delay in supplying them. Libelant's counsel urged that the steamer should have been breasted out from the wharf, so that lighters could have been placed inside as well as outside, and discharge could have been had from both sides at once. Donahue testified that the captain would not breast out the steamer when asked to do so, and the captain testified that he would have moved his ship, had he been asked. Failure to breast out, then, resulted from the inaction or refusal of Donahue or of the captain. Both were the libelant's agents, and the charterer is not responsible for their misconduct, if misconduct there was. The libel makes the full rate of discharge 1,200 tons a day, and this rate was surpassed on one day, and nearly equaled on two others, by a discharge of coal from one side only. Donahue testified: "There were two lighters all the time—all I could work." "I think we done better than any of them [other steamers] at the time." "I had barges there all the time." "We had two barges there all the time, which was all we could work." "The only barges I had there fitted the hatches all right—all I could work. There was no trouble with fitting the hatches." "If I could have worked on the inside as well as on the outside, it would have been all right." "I complained to him [the captain] because I couldn't work my men as I ought to. I told him we ought to breast off. He seemed to be in a hurry, and gave me no show to get my barges placed properly."

It is true that these statements of Donahue were contradicted by other witnesses, and some of them are not quite accurate. At times there was only one lighter alongside. Whether the delay in bringing up fresh lighters was unduly great and, if so, who was to blame for the delay, is not plain. We have two agents of the libelant, each charging the fault upon the other,

and each asserting that, if the other had done his duty, the cargo would have been discharged at a proper rate. Under these circumstances, I do not find sufficient evidence to hold the charterer at fault. The barge Tobyhanna, which was ready in the stream, was not put in because Donahue said he could not use her. Captain Morgan testified that only two lighters could have been used without breasting out, and two lighters were alongside nearly, though not quite, all the time.

On November 15th discharge was stopped during five hours for want of a customhouse permit. It seems that this permit was mislaid by a customs officer. In general, it is the duty of the consignee to procure a permit for the discharge, and it does not follow that he is excused in all cases because one customs officer omits to deliver the permit to another. In this case the delay appears to have been caused by some officer's carelessness, and the permit was procured by the charterer very soon after the discharge had been stopped for want of it. On the whole, without further evidence, I do not think the charterer's liability for the delay has been made out. It does not appear that the stevedore was ready to proceed when the permit arrived, and the testimony of Mr. Purdon suggests that he was not.

Libel dismissed with costs.

Stephen R. Jones (Carver & Blodgett, on the brief), for appellant.

Benjamin L. M. Tower (Tower, Talbot & Hiler, on the brief), for appellee.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PER CURIAM. This is an appeal from the District Court for the District of Massachusetts dismissing a libel claiming demurrage. The only issues involved are pure questions of fact. As to these issues the proofs are of such an indefinite character that we are unable to reach a conclusion which we could pronounce more satisfactory than that reached by the District Court. Therefore we must abide by its determination.

The decree of the District Court is affirmed, and the appellee recovers its costs of appeal.